UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBERTO LOPEZ-LOPEZ, JASMINE VALLE,          **COMPLAINT**
JAYLEEN LOPEZ, JONATHAN LOPEZ,
JOSEPH LOPEZ, HERIBERTO VALLE and            Jury Trial Demanded
CARLOS HERNANDEZ,

                                    Plaintiffs,

        -against-

THE CITY OF NEW YORK, CAPTAIN HUGO
DOMINGUEZ, and JOHN and JANE
DOE 1 through 10, individually and in their official
capacities (the names John and Jane Doe being
fictitious, as the true names are presently unknown)

                                    Defendant.
------------------------------------------------------------------X


## NATURE OF THE ACTION

1.      This is an action to recover money damages arising out of the violation of

Plaintiffs'rights under the Constitution of the United States, the Constitution of the State of New

York as well as the common law of the State of New York.

## JURISDICTION AND VENUE

2.      This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§§

1981, 1983, and 1988, the Fourth, Eighth and Fourteenth Amendments of the United States

Constitution, against Captain Hugo Dominguez, John Doe defendants mentioned above and

against Defendant City of New York ("CITY", collectively, "Defendants").

3.      The jurisdiction of this Court is predicated upon 28 U.S.C.§§ § 1331, 1343 and

1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and(c).

5. Notice of the Plaintiffs' claim and their intention to sue thereon, and of the time when and the place where their injuries were sustained, was duly served and filed with the defendant, CITY, and acknowledged by defendant, CITY on the 26th day of April 2018. More than thirty (30) days have elapsed since the service of such notice of claim, and defendant, CITY, has failed and refused to adjust such claim.

6. A General Municipal Law Section 50-h Hearing was conducted by Defendant CITY on all Plaintiffs before the commencement of this action.

7. This action is started within one year and 90 days from the date of occurrence.

## JURY DEMAND

8. Plaintiffs demand a trial by jury in this action.

## PARTIES

### Plaintiffs

1. Plaintiff ROBERTO LOPEZ-LOPEZ is a Hispanic male residing in Kings County.

2. Plaintiff JASMIN VALLE is a Hispanic female residing in Kings County.

3. Plaintiff JAYLEEN LOPEZ is a Hispanic female residing in Kings County.

4. Plaintiff JONATHAN LOPEZ is a Hispanic male residing in Kings County.

5. Plaintiff JOSEPH LOPEZ is a Hispanic male residing in Kings County.

6. Plaintiff HERIBERTO VALLE is a Hispanic male residing in Kings County.

7. Plaintiff CARLOS HERNANDEZ is a Hispanic male residing in Kings County.

**Defendants**

8. At all times herein stated, the defendant, THE CITY OF NEW YORK (the "CITY"), was, and continues still to be, a public corporation within the State of New York, and duly created, organized and existing under and by virtue of the laws of the State of New York.

9. At all times herein stated, the CITY was, and continues still to be, a municipal corporation within the State of New York, which was duly created, organized and existing under, by virtue of the laws of the State of New York.

10. At all times herein stated, the CITY did maintain a police department pursuant to law.

11. Defendant CITY operates the New York City Police Department ("NYPD"), a department or agency of Defendant CITY responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers.

12. Upon information and belief, Defendant Captain Hugo Dominguez at all relevant times was the Executive Officer of the 83rd Precinct.

13. At all times relevant Defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers, if any, of Defendants John and Jane Doe 1 through 10.

14. At all times herein stated, the CITY did employ police officers pursuant to law.

15. At all times herein stated, Defendant Captain Dominguez (hereinafter "Captain Dominguez"), and other John Doe CITY employees, whom represented to the Plaintiffs that they were employed by the CITY and worked at the NYPD 83rd Precinct Station House; and other unidentified CITY employees, John and Jane Does 1 through 10 (hereinafter collectively "NYPD Officers"), all of whom were in the employ of defendant, CITY and assigned to the NYPD.

16. At all times herein stated, the defendant, its agents, servants and employees, were acting under color of state law and pursuant to municipal policy and custom.

## RELEVANT FACTS

17. Plaintiffs Roberto Lopez-Lopez, who works as a butcher, and his wife Jasmine Valle, who works as an administrator, are hard-working, law-abiding and loving parents (and grandparents) who have always provided a safe and happy home life to their children and grandchild. As explained below, that safe and happy home life was forever destroyed by the Defendants' unlawful actions.

18. The Plaintiffs' interaction with Defendants began on or about February 8, 2018. Luis Lopez is the brother of Plaintiff Roberto Lopez-Lopez, but Luis does not reside with Roberto.

19. On or about February 8, 2018, Luis Lopez pounded on the door of 1248 Jefferson Avenue, Brooklyn, New York 11221 (the "Lopez Home") and informed his brother that he had been shot in the foot blocks away from the Lopez Home.

20. Plaintiff Roberto Lopez-Lopez did what any brother would do. He transported his

brother Luis Lopez to nearby Wyckoff Heights Medical Center and the nightmare began.

21.    According to Defendant CITY's website: "In 1994, Police Commissioner William Bratton implemented CompStat, which through management, statistics, and accountability, successfully drove down crime to record levels not seen since the 1960s." In addition "The NYPD releases a number of incident level datasets related to police enforcement and criminal activity. By releasing this information, the Department aims to increase transparency and foster collaboration, with a goal of continually improving police-community relationships through the use of open data."

22.    Using CompStat, NYPD gave unprecedented authority and flexibility to the city's precinct commanders. However, precinct commanders are held accountable for reducing crime. If certain crimes are reduced, precinct commanders are often promoted.

23.    If certain crimes increase, precinct commanders are often replaced.

24.    Upon information and belief, Defendant Dominguez was the Executive Officer of the 83 Precinct at all relevant times.

25.    Upon information and belief, as Executive Officer of the 83 Precinct, if Defendant Dominguez helped keep certain crime statistics low, he could be considered for a promotion to a commanding officer position by Defendant CITY.

26.    It is often reported that NYPD keeps crime statistics down by underreporting, downgrading         and         reclassifying         of         crimes.         *See,*         *e.g.;* https://www.nytimes.com/2011/12/31/nyregion/nypd-leaves-offenses-unrecorded-to-keep-crime-

rates-down.html

27.     Among other statistics, CompStat tracks the number of shooting victims by precinct on a weekly, monthly and annual basis.

28.     From the date that Luis Lopez was shot, NYPD began its effort to reclassify the incident from a felony assault – which is one of the seven major crime categories tracked at Compstat - to a person who accidently shot himself.  If successful, a self-inflicted shooting would not count as a negative CompStat statistic, for which the 83rd Precinct commander and Defendant Dominguez would otherwise be responsible.

29.     On February 8, 2018, Defendants interviewed Plaintiff Roberto Lopez-Lopez in an effort to coerce him to say that Luis Lopez shot himself in the foot.  When Plaintiff Roberto Lopez-Lopez refused to do so, the harassment began.

30.     Defendants immediately brought up the fact that he owned a firearm that was licensed by NYPD's License Division.

31.     Defendants threatened that if Plaintiff Roberto Lopez-Lopez did not tell them what they wanted to hear – that Luis Lopez shot himself – they would have NYPD suspend his pistol license.

32.     When Plaintiff Roberto Lopez-Lopez repeated that he had no idea how his brother was shot, NYPD suspended his pistol license and vouchered his firearm.  Ultimately, NYPD revoked Roberto Lopez-Lopez's pistol license.

33.     Defendants escorted Plaintiff Roberto Lopez-Lopez from Wyckoff Heights

Medical Center to the Lopez Home to seize his legal firearm from the closet in his bedroom.

34.     When Defendants seized Plaintiff Roberto Lopez-Lopez's legal firearm, they did not seize legally-possessed ammunition and a wooden antique replica of a gun.  These items were clearly visible in the same closet as the safe containing Plaintiff Roberto Lopez-Lopez's legal firearm that was vouchered in retaliation for Plaintiff Roberto Lopez-Lopez not telling Defendants what they wanted to hear.

35.     There have never been any allegations that Plaintiff Roberto Lopez-Lopez's legally-possessed firearm was used in the shooting of his brother Luis Lopez.

36.     During the month of February 2018, Plaintiff Roberto Lopez-Lopez was brought into the 83rd Precinct Detective Unit on several occasions and was interrogated.  He was shown his pistol license and was told that if he told the Defendants that Luis Lopez shot himself, he could have his pistol permit back. However, if he did not, his license would be revoked.

37.     During the month of February 2018, Defendants visited the Lopez Home on several occasions and interviewed Lopez family members.  Defendants repeatedly told Plaintiff Roberto Lopez-Lopez, in sum and substance, "all you have to do is tell us your brother shot himself and you will get your gun back right now and your life will go back to normal."

38.     Plaintiff Roberto Lopez-Lopez repeated that he had no idea how his brother was shot.  NYPD revoked his pistol license.

39.     When the unlawful pressure tactics failed, Defendants took the harassment of Plaintiff Roberto Lopez-Lopez to a more outrageous level.

40.     On or about March 28, 2018, at approximately 06:10 a.m. on that date, Plaintiffs were lawfully and properly at the Lopez Home.  Some of the Plaintiffs were sleeping in the Lopez home.

41.     The Defendants abused their authority by unlawfully entering the Plaintiffs' home, using unreasonable force by pointing firearms at the unarmed Lopez Family in a threatening manner and placing them in substantial fear that they would be shot.

42.     The Defendants abused their authority and acted in bad faith when, without justification or probable cause, when they violently broke through the front door to the Lopez Home with the use of a battering ram.

43.     On or about March 28, 2018, at approximately 06:10 a.m. the defendant, CITY, its agents, servants and employees, including and particularly Captain Dominguez and other NYPD Officers, without any justification or  probable cause, and in bad faith and by abusing their authority, unlawfully arrested the Plaintiffs in the Lopez Home.

44.     On or about March 28, 2018, at approximately 06:10 a.m. the defendant, CITY, its agents, servants and employees, including and particularly Captain Dominguez and other NYPD Officers, without any justification or  probable cause, and in bad faith and by abusing their authority, unlawfully used unreasonable force against each Plaintiff.

45.     The Defendants used unreasonable force by viciously and violently throwing each Plaintiff to the floor and handcuffing them in a manner that inflicted great pain and suffering; and continued to use such unreasonable force by refusing the suffering Plaintiffs pleas to ease their pain by loosening the restraints.

46.     Not content with physically inflicting pain and suffering upon the Lopez Family, the Defendants then shockingly opened the Lopez Home's back door, unnecessarily exposing the half-dressed Plaintiffs, (Some of the Plaintiffs were sleeping in bed at the time of the incident) including the **minor 2-month old child**, to the extreme cold-morning temperatures.

47.     Although the Plaintiffs pleaded with the Defendants on behalf of the child's welfare to close the door, outrageously the Defendants laughed and refused to do so, thereby subjecting the Lopez Family to severe emotional distress.

48.     Defendants claimed they had a search warrant, but never showed it to any of the Plaintiffs.

49.     Upon information and belief, if Defendants actually did possess a valid search warrant, it was obtained based on information from February 8, 2018.

50.     Upon information and belief, if Defendants actually did possess a valid search warrant, it was obtained based on information relating to the legally-possessed ammunition and wooden antique replica of a gun, that Defendants observed but did not seize on February 8, 2018.

51.     Without the slightest justification, the Defendants unlawfully entered every room in the Home and proceeded to destroy furniture and damage Plaintiffs' belongings, interior walls and doors.

52.     Upon information and belief, Defendants took approximately $2,000 in cash and jewelry and did not voucher it.

53. After unlawfully breaking into the Lopez Home, assaulting the Lopez Family and destroying and stealing their belongings; the Defendants, without probable cause refused refusing to display a warrant or otherwise explain their actions.

54. Defendant, CITY, its agents, servants and employees, including and particularly Captain Dominguez and other NYPD Officers, without any justification or probable cause, and in bad faith and by abusing their authority, unlawfully took the Plaintiffs into custody.

55. Plaintiffs were handcuffed and placed in police vehicles. The Defendants then proceeded to unlawfully transport the Lopez Family against their will, in an unsafe and unlawful manner in a motor vehicle. In fact, the minor 2-month old Plaintiff was dangerously transported in the back seat of a police vehicle without a child car seat, in clear violation of NYS law, being held by her mother in one arm while the mother's other arm was handcuffed to the vehicle.

56. On or about March 28, 2018, Defendant CITY, its agents, servants and employees, without any justification or probable cause, and in bad faith and by abusing their authority, unlawfully confined the Plaintiffs against their will in the City and State of New York at:

(a)  the NYPD 83rd Precinct Station House;

(b)  the Criminal Court Building, located at 120 Schermerhorn Street, Brooklyn, New York; and

(c)  and elsewhere in the City and State of New York. Defendant CITY, knowing such charges to be false, did charge Plaintiffs with the offenses of possession of

ammunition, criminal possession of a weapon and criminal possession of marijuana.

49.     Plaintiffs did continue to be so confined and deprived of their liberty until on or about March 29, 2018.

50.     While in the custody of Defendants, each of the Plaintiffs was interrogated about the Luis Lopez shooting. Plaintiffs were encouraged to lie and say that Luis Lopez shot himself to support Defendants' false narrative and lower Defendants' Compstat statistic.

51.     Although the Lopez Family believed that Defendants had made a mistake since they had done nothing wrong and that their nightmare would soon end, little did they know it was only the beginning.

52.     From the Lopez Home, members of NYPD allegedly recovered a small amount of marijuana, legally-possessed ammunition and a wooden antique replica of a gun.

53.     Upon information and belief, on February 8, 2018, Defendants observed said legally-possessed ammunition and the wooden antique replica of a gun, but did not voucher these items and did not charge any of the Plaintiffs criminally with their possession.

54.     The fact that all of the Plaintiffs were charged with criminal possession of a weapon and sent "through the system" and to central booking for possession the legally-possessed ammunition and a wooden antique replica of a gun, which was obviously not a firearm, evidences Defendants' maliciousness and bad faith.

55.     Plaintiff Heriberto Valle was held at the 83rd Precinct for several hours and was released without seeing a judge.

56.     All of the other Plaintiffs were held at the 83rd Precinct for several hours, taken to central Booking and arraigned in front of a judge.

57.     At the 83rd Precinct, Defendants falsely informed employees of the Kings County District Attorney's Office that Plaintiffs ROBERTO LOPEZ-LOPEZ, JASMIN VALLE, JAYLEEN LOPEZ, JONATHAN LOPEZ, JOSEPH LOPEZ and CARLOS HERNANDEZ illegally possessed a weapon.

58.     Ultimately, Plaintiffs ROBERTO LOPEZ-LOPEZ, JASMIN VALLE, JAYLEEN LOPEZ, JONATHAN LOPEZ, JOSEPH LOPEZ and CARLOS HERNANDEZ were taken to Brooklyn Central Booking.

59.     After about twenty-four hours in custody, Plaintiffs ROBERTO LOPEZ-LOPEZ, JASMIN VALLE, JAYLEEN LOPEZ, JONATHAN LOPEZ, JOSEPH LOPEZ and CARLOS HERNANDEZ were arraigned and received adjournments in contemplation of dismissal on the marijuana charge at arraignment.

60.     Plaintiffs each missed days of work.

61.     When Plaintiffs returned to the Lopez Home, they discovered that Defendants had damaged or destroyed most of Plaintiffs' belonging and the contents of the Lopez Home.

62.     Plaintiffs suffered damage as a result of Defendants' actions. Plaintiff were deprived of their liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, and damage to their reputation.

63.     Plaintiffs were caused to sustain physical injuries and psychological damage and

to have suffered pain, shock and mental anguish; that these injuries and their effects will be permanent; and as a result of said injuries Plaintiffs have been caused to incur, and will continue to incur, expenses for medical care and attention.

64. Plaintiffs have suffered from shock to their nervous systems, have suffered and continue to suffer from emotional and psychological injury, including their ability to sleep and now experience fear and anxiety when in the presence of police personnel.

65. Plaintiff Jonathan Lopez suffered physical injury to his ribs which was caused when Defendants threw him to the ground and an unknown Defendant stood on his back.

66. Plaintiff Jayleen Lopez suffered physical injury to both of her wrists from the handcuffs being unnecessarily tight on her wrists for an extended and unreasonable period of time.

67. Plaintiff Jayleen Lopez requested to leave her two-month old child with her grandmother who lived on the second floor of the Lopez Home. However, Defendants refused to let her.

68. Plaintiff Jayleen Lopez was forced to take her two-month child with her while being transported in handcuffs to the 83rd precinct. The baby, who Jayleen explained had not had all of her shots, was placed in the back off the germ-infested police vehicle without a car seat.

69. When at the precinct, Plaintiff Jayleen Lopez was placed with one hand handcuffed to a window, leaving only one free hand to hold her baby. She was not able to feed her child during the time she was in custody despite requesting to be allowed to do so several

times.

70. Eventually Plaintiff Jayleen Lopez was allowed to have two family members pick up her baby.

71. Upon information and belief, in the event the Defendant, CITY, its agents, servants and employees, actually did procure a search warrant, they did so by maliciously proffering false, misrepresented and misleading testimony and allegations against Plaintiffs before a Judge in a New York Court of competent jurisdiction in and for the County of Kings, to fraudulently obtain said search warrant.

72. In the manner described above, the Defendant, CITY, its agents, servants and employees, due solely to their gross negligence and deliberate indifference, did willfully, wantonly, recklessly and maliciously subject the Plaintiffs to false arrest and malicious prosecution, in violation of their rights under the New York State Constitution and also the Fourth and Fourteenth Amendments to the United States Constitution, without any fault or want of care on the part of the Plaintiffs contributing thereto.

73. As a result of such occurrence, the Plaintiffs suffered: confinement; loss of liberty; shock, fright, fear; and severe mental anguish. Moreover, Plaintiffs' were caused to suffer: false and wrongful confinement; incursion of unnecessary expenses for their defenses and damage to their personal property; grave risk to their life and property. Plaintiffs were also deprived of their rights, privileges and immunities secured to them by the Constitution and laws of the United States and the State of New York, including and particularly: their rights not to be

subjected to unnecessary restraint and harm; to be secure in their person against unreasonable searches and seizure; to be free from harm and from arbitrary interference with their person; freedom of movement; due process of law, and to be accorded the equal protection of the laws at the hands of persons acting under color of state law.

## AS AND FOR A FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

74.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

75.     Defendant Dominguez, by his conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

76.     Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

77.     The conduct and actions of Defendants acting under color of law and under their authority as officers was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific serious bodily harm, pain and suffering in violation of the Plaintiffs' Constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

78.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the

damages herein before alleged.

## AS AND FOR A SECOND CAUSE OF ACTION
### (False Arrest)

76      Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

77      Defendants violated the Fourth and Fourteenth Amendments because they arrested Plaintiffs without probable cause.

78      Upon information and belief, if Defendants actually did possess a valid search warrant, it was obtained based on information relating to the legally-possessed ammunition and wooden antique replica of a gun, that Defendants observed but did not seize on February 8, 2018.

79      As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Failure to Intervene)

79.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

80.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

81.     Accordingly, the defendants who failed to intervene violated the Fourth, Eighth and Fourteenth Amendments.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Monell Claim)

82.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

83.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged. Plaintiff repeats, reiterates, and realleges each and every allegation with the same force and effect as if fully set forth herein.

84.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

85.     The aforementioned customs, policies, usages, practices, procedures, and rules of the NYPD included, but were not limited to, police officers: failing to report misconduct of other officers; unlawfully searching individuals and arresting individuals; misreporting Compstat statistics, and unlawfully seizing an individual's personal property.

86.     In addition, Defendant CITY engaged in a policy, custom, or practice of inadequate screening, hiring, retaining, training, and supervising its employees that was the moving force behind the violation of Plaintiffs rights as described herein. As a result of the failure of the City to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant City has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

87.     The foregoing customs, policies, usages, practices, procedures, and rules of the City and the NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiffs.

88.     The foregoing customs, policies, usages, practices, procedures, and rules of the

City and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiffs as alleged herein.

89. The foregoing customs, policies, usages, practices, procedures, and rules of the City and the NYPD were the moving force behind the constitutional violations suffered by Plaintiffs as alleged herein.

90. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the City and NYPD, plaintiff was subjected to an illegal search and unlawfully arrested.

91. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

92. All of the foregoing acts by defendants deprived Plaintiffs of federally protected rights, including, but not limited to, the right to be free from false arrest/unlawful imprisonment and the right to be free from unreasonable search and seizure.

93. As a result of the foregoing, Plaintiffs are entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligence Against Defendant City)

94. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

95. Defendants owed Plaintiffs a duty of care to prevent them from being false

arrested, maliciously prosecuted, illegally searched and assaulted.

96. Defendants breached that duty of care.

97. Defendants' breach of duty was the but-for cause of Plaintiffs' injuries.

98. Defendants' breach of duty was the proximate cause of Plaintiffs' injuries.

99. Plaintiffs sustained damages, including but not limited to serious physical injuries, emotional injuries and pain and suffering as a result.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision Against Defendant City)

100. Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

101. The above-described injuries suffered by the Plaintiffs are the proximate result of the negligence of the Defendant CITY in that the Defendant City failed to exercise reasonable care in the hiring, employment, supervision, and training of its employees in NYPD.

102. Defendant CITY failed to properly train Defendants as to the appropriate investigative techniques required to assess criminal liability, lawfully procure search warrants and properly identify firearms.

103. Defendant CITY failed to exercise reasonable care by retaining and not terminating the employment of individual Defendants, or taking other appropriate corrective action. The occurrences complained of herein were due to the negligence and recklessness of the Defendant CITY.

104. By reason of the tortuous conduct of Defendants, Plaintiffs have been damaged as set forth above.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (New York Constitution Art. I, § 11)

105.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

106.    By the aforesaid acts, defendants have violated Plaintiffs' right to the equal protection of laws under Article I, § 11 of the New York State Constitution, thereby giving rise to a cause of action pursuant to that Article.

107.    The conduct and actions of the individual Defendants and Defendant CITY, acting under color of law, in falsely arresting, detaining, and prosecuting Plaintiffs, was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific and serious bodily, mental and emotional harm, pain and suffering in violation of the Plaintiffs' Constitutional rights as guaranteed under laws and Constitution of the State of New York. The above-described actions and omissions engaged in under color of state law by the defendants, including defendant NYC, sued as a person within the meaning of Article I, § 11, deprived the Plaintiffs of rights, including but not limited to, rights under Article I, § 8, 9, guaranteeing freedom of expression and association, Article I, § 12, guaranteeing protection against unlawful seizure of the person, Article I, § 11 guaranteeing due process and equal protection under the law, and Article I, § 5 guaranteeing protection from cruel and unusual punishment.

108.    By reason of the Constitutional violations by Defendants, Plaintiffs have been

damaged as set forth above.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Malicious Prosecution)

109.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

110.     By virtue of the aforesaid acts, defendants, their agents, servants, employees and/or representatives, maliciously, and unjustifiably prosecuted Plaintiffs through the use of knowing and intentional perjurious information, documents and testimony.

111.     The prosecution of Plaintiffs by defendants was malicious and without just or probable cause or reason.

112.     The Defendants knowing that said charges were false and/or lacked probable cause, continued to prosecute the Plaintiffs by acts including, but not limited to, swearing of a false complaint, charging Defendants with criminal possession of a weapon for an item that was clearly not a firearm.

113.     The charges resulted in an adjournment in contemplation of dismissal at arraignment, but only after Plaintiffs spent a significant amount of time in custody.

114.     As a result thereof, the Plaintiffs were charged with false accusations and were the victims of malicious prosecution by the Defendants, their agents, servants, employees and/or representatives, and suffered the injuries set forth above.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Assault)

115.     Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

116.    Defendants maliciously, wantonly, unlawfully and/or intentionally acted to place Plaintiffs in apprehension of imminent harmful or offensive bodily contact.

117.    Plaintiffs sustained damages, including but not limited to serious physical injuries, emotional injuries and pain and suffering as a result.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Battery)

118.    Plaintiffs repeat and reallege each and every allegation as if fully set forth herein.

119.    Defendants maliciously, wantonly, unlawfully and/or intentionally did make body contact with Plaintiffs, which was harmful, offensive and without Plaintiffs' consent.

120.    Plaintiffs sustained damages, including but not limited to serious physical injuries, emotional injuries and pain and suffering as a result

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


Dated: New York, New York
      April 15, 2019

**LAW OFFICES OF
ROBERT E. BROWN, PC**

By: _____
    Robert E. Brown
14 Wall Street, 20th Floor
New York, New York 10005
Telephone: (212) 766-9779
E-mail: Rbrown@robertbrownlaw.com
*Attorneys for Plaintiffs*